---
Cutter *v.* Emery.
---

---

CUTTER, Ex'r, *v.* EMERY, Adm'r.

If two persons sign the same obligation as sureties for a third—one of them, at the request of the principal, and the other at the request of the first surety—they are not co-sureties as between themselves; but the first surety stands in the relation of principal to the second, is responsible to him for whatever he may be compelled to pay, and has in no event any claim against him for contribution.

IN ASSUMPSIT. The facts agreed were as follows: Charles W. Cutter, son of Jacob Cutter, and brother of Ralph C. Cutter, was appointed navy agent of the United States, at Portsmouth, by a commission signed by the President, dated September 18, 1849, to continue in force four years from October 1, 1849. He gave a bond to the United States, dated October 10, 1849, signed by himself as principal, and by Jacob Cutter, Ralph C. Cutter, Horatio Coffin, Ichabod Bartlett, and Charles W. March, as sureties, with a condition, " that if the above bound Charles W. Cutter, shall faithfully discharge all his duties as navy agent, in the navy of the United States, then," &c.

On said October 10, 1849, said Jacob and Ralph C. Cutter gave to said Bartlett and Coffin a bond, with a condition, " that whereas the said Bartlett and Coffin have this day signed the bond of Charles W. Cutter, as navy agent, as sureties to the United States, for the faithful performance

of his duties as such: now if we, the said Jacob and Ralph C. Cutter, shall forever indemnify and save harmless the said Bartlett and Coffin, against any loss, cost or damage by reason of their executing said bond to the United States, then," &c.; and said Jacob Cutter, on the same day, gave to said Bartlett and Coffin a mortgage deed of real estate, with a condition, " that if the said Jacob, &c., should well and truly execute and perform the condition of his bond to said Bartlett and Coffin, bearing even date with these presents, and signed by said Jacob Cutter and Ralph C. Cutter, then," &c.

Charles W. Cutter received another commission from the President of the United States, as navy agent at Portsmouth, dated April 17, 1850, issued by the President, by and with the advice and consent of the Senate, to continue in force four years from April 16, 1850, and gave a new bond, dated April 23, 1850, in the same form and with the same sureties as before.

Said Charles W. Cutter became a defaulter, and resigned, or was removed from office, in July, 1851. A suit was commenced on the bond dated April 23, 1850, and judgment recovered against Jacob and Ralph C. Cutter, and Horatio Coffin, for $18,398.83. No service was made on Charles W. Cutter, or March, and no judgment was rendered against them, or against the estate of Bartlett, who died pending the suit.

Of the amount thus recovered, $6,000 was levied on the real estate of Jacob Cutter, mortgaged to Bartlett and Coffin.

Jacob Cutter died October 4, 1857, testate, having appointed said Ralph C. Cutter, and the plaintiff, Hannah Cutter, his executors. Ralph declined to administer, and no letters testamentary have been granted on the estate.

Ichabod Bartlett died in September, 1853, and the defendant was appointed administrator on his estate, November 8, 1853, and on the 7th of August, 1857, Jacob

---
Cutter *v.* Emery.
---

Cutter made a demand upon him, as administrator, to pay the amount due from said Bartlett's estate by reason of his having paid said $6,000.

It was agreed that the court might draw such inferences, and come to such conclusions as to facts, upon the above statements, as in their opinion a jury would be authorized to do. Other facts, agreed not material to the decision, are omitted.

*J. W. Emery, pro se.*

As between Jacob Cutter and Bartlett, Cutter was principal and Bartlett surety. Upon the bond, J. Cutter and Bartlett both appear as sureties for Charles, but as between *them*, the defendant is not precluded from showing the fact to have been otherwise. *Grafton Bank* v. *Kent*, 4 N. H. 221; *Davis* v. *Barrington*, 30 N. H. (10 Foster) 517.

The evidence unquestionably shows that Bartlett signed the first bond at the request of J. Cutter. Is it not probable that he signed the second at a like request? Is not the balance of the evidence that he did so? Is not the evidence irresistible that he signed the second bond upon a like request? If so, the court must so find, because they are to draw the same inferences which a jury would be authorized to make. Hence the plaintiff cannot recover.

Jacob Cutter agreed to indemnify Bartlett, and save him harmless, by a bond and mortgage, for signing the bond to the United States.

In the bond of Jacob and Ralph C. Cutter to Bartlett and Coffin, the first bond to the United States only is named. The second bond to the United States was for the same office and the same amount, and principally covered the same time, to secure the fulfillment of the same duties as those named in the first bond. The appointment was from the same power: indeed, it was another security for the same liabilities, and the bond and mortgage to Bartlett and Coffin was not thereby discharged. *Elliot* v.

*Sleeper*, 2 N. H. 525; *Bank* v. *Willard*, 10 N. H. 210; *Williams* v. *Little*, 12 N. H. 29; *Davis* v. *Maynard*, 9 Mass. 242; *Watkins* v. *Hill*, 8 Pick. 522; *Pomroy* v. *Rice*, 16 Pick. 22; *Dunham* v. *Day*, 15 Johns. 555.

The first bond to the United States covered the time during which the defalcation of Cutter occurred. It was no new appointment Cutter received. It was only a new commission—the Senate assenting to the appointment—issued for the same office. The defalcation was, therefore, as much covered by the first bond to the United States as by the second. *Exeter Bank* v. *Rogers*, 7 N. H. 21.

The real object of the bond and mortgage to Bartlett and Coffin was to indemnify them for becoming sureties for the good conduct of Charles W. Cutter, while he should hold the office of navy agent. Cutter failed to perform the duties faithfully, and the plaintiff now seeks to recover from the defendant the money which her intestate agreed the defendant's intestate should not be called upon to pay, or, if called upon to pay, he would protect him therefrom.

2. This suit is premature. The plaintiff ought not to have commenced the suit before she had been legally appointed executrix, and given bond according to law, and must therefore fail. *Tappan* v. *Tappan*, 30 N. H. (10 Foster) 68.

3. The plaintiff's demand was not exhibited to the defendant, and demand of payment made on him within two years after the original grant of administration. The language of the statute upon this point is express and plain. Comp. Stat. 409, chap. 170, sec. 2. It has been held that the claim is extinguished if not presented within the two years. *Gookin* v. *Sanborn*, 3 N. H. 491. The fact that such claim has been so exhibited must be proved upon the general issue. *Mathes* v. *Jackson*, 6 N. H. 105. A debt due from the plaintiff's intestate to the defendant cannot be set off unless so presented. *Jones* v. *Jones*, 21 N. H. (1 Foster) 222. This point does not appear to have received any attention in *Sibley* v. *McAllister*, 8 N. H. 389.

4. The suit was not commenced within three years next after the grant of administration to the defendant. The statute on this point, also, is distinct and express. Comp. Laws 409, chap. 170, sec. 5. No party has any right or power to waive the statute. *Brown* v. *Leavitt*, 26 N. H. (6 Foster) 497.

*H. Webster*, for the plaintiff.

There is nothing in the case to raise the presumption that Bartlett signed the bond, dated April 23, 1850, at the request of Jacob Cutter. If the commission of April 17, 1850, had issued on an appointment to another office than that of navy agent, and a new bond had been given by the same sureties; or if the bond of April 23 had been signed by other sureties than those to the first bond, the argument of the defendant would apply equally well as now, and in both it might as well be presumed that the bond was signed at the request of J. Cutter, because of his indemnifying against the first bond.

The commission dated April 17, 1850, was upon a new appointment, and so created a new liability. By the laws of the United States, navy agents can be appointed for a term of four years only. 3 L. & B., ed. U. S. Stat. 582 ; Act May 15, 1820. Had it been only a confirmation of the original appointment, the term could only have been for four years from October 1, 1849, whereas it was for four years from April 16, 1850.

The three New-Hampshire cases cited by the defendant are all upon promissory notes, which are merely evidence of an existing liability, and all turned upon the fact that the debt had not been paid, and nothing accepted in satisfaction of it. In this case the liability on which J. Cutter's bond and mortgage were given, terminated, and a new liability commenced, with the new appointment and the new bond of April 23, 1850.

In *Exeter Bank* v. *Rogers*, no new bond was given, and the surety was a director of the bank. The object of the bond

and mortgage to Bartlett and Coffin was not a general indemnity for the good conduct of C. W. Cutter for all time, but for his good conduct during the existence of the liability for which the first bond to the United States was given.

They might well have had doubts as to his capacity or integrity, and so have hesitated to sign the first bond, and those doubts might have been removed before signing the second, so that they desired no further indemnity.

If the defendant's intestate had desired further security, he would have had a new bond and mortgage executed, and not have trusted such uncertain security.

*S. H. Goodall,* for the plaintiff.

The only mortgage given was to secure a bond of October 10, 1849, on an appointment by the President only. The forfeiture and suit took place under a bond on the appointment of the President and Senate, dated April 17, 1850, and for a different space of time. There was no agreement that that mortgage should apply to the bond of April 17, on which the suit and payment were.

The case does not show that the mortgage applied to that bond, and the court cannot infer such an agreement. A mortgage to secure a bond expiring on the first day of October, 1853, cannot be held to cover a bond expiring April 17, 1854. A mortgage could not have been made October 10, 1849, to secure advances to be made April 17, 1850, nor to secure an agreement to be made at that time. By the law, a new mortgage would be required. The parties, even if they had agreed that the old mortgage should cover the new bond, could not have made it valid without a new mortgage. The new bond was a new agreement for a new time. A new mortgage was as much required as a new bond. If the parties intended such mortgage to apply, which was not the fact, as we say, Mr. Bartlett has been indemnified from all loss, cost or damage by reason of executing the bond of October 10, 1849.

It does not appear that there is or has been any such bond in existence since April, 1850.

The cause of action here did not arise until since the death of Bartlett. It arose when the levy was completed, on the 6th day of May, 1858. Bartlett and Cutter were both sureties. In such a case as the present, a demand was not required in two years, nor a suit in three years. *Sibley* v. *McAllister*, 8 N. H. 389; *Judge of Probate* v. *Heydock*, 8 N. H. 491; *Peaslee* v. *Breed*, 10 N. H. 491; *Boardman* v. *Paige*, 11 N. H. 437.

BELL, J. Under our statute, (Rev. Stat., chap. 161, sec. 10) this action is well commenced, and may be maintained if the executrix takes out letters testamentary, and enters an appearance, indorses the writ, &c., though she has no authority to act as executrix when the suit is brought.

It is objected that the present action cannot be sustained, because the claim was not presented to the administrator within two years, nor the suit brought within three years, after the original grant of administration. It is not suggested that the estate is insolvent, nor that the administration has been suspended, nor that the claim, not being due, or depending on a contingency, has been filed in the probate court, and the sum necessary to pay it reserved in the administrator's hands by order of the court; and it is not at once seen how it can be successfully contended that the claim is not barred on both grounds.

It is said the cause of action did not arise until since the intestate's death, at the time when the levy was complete, on the 6th of May, 1858 ; and in such a case, a demand within two years, and a suit within three years, are not required. But it seems to us that provision is made by the sixth section for such cases, and that unless the claim has been filed in the probate court, and a fund reserved for its payment, it may be barred by a neglect to present it, or to commence a suit. Though a claim is not

due, and it is contingent whether it ever will be, it is still capable of presentment, and there must be few cases where, by the exercise of proper diligence, a party may not entitle himself to bring his action within three years.

There is nothing unreasonable in providing that an undue or contingent claim should be barred, if it is not properly filed in court and a fund reserved for its payment.

Four cases in our Reports are cited, as authorities for the position, that in such a case a claim need not be presented nor sued. The effect of those cases is stated in the last of them, *Boardman* v. *Paige*, by *Woods*, J. When one of two or more co-promissors still continues liable upon the original contract to the promisee, and is lawfully compelled, by virtue of such contract, to pay the debt or discharge the original liability, the liability of the other co-promissors for contribution will remain, notwithstanding they may be discharged by the operation of the statute of limitations from that liability to the promisee. One of these cases, *Sibley* v. *McAllister*, 8 N. H. 389, was a case of a suit by a surety against an administrator, where the original note was not presented within two years. But in none of these cases was any thing decided as to the necessity of presenting within two years the claim of a surety, who has subsequently been compelled to pay. The explanation of this will be found in the difference between the statute provisions then in force, and those of the Revised Statutes. The statute of July 2, 1822, Laws 1830, 338, provided that no action against an administrator shall ever be sustained unless the demand, whether payable or not, was exhibited to the executor, &c., within two years from the original grant of administration; but if the demand depended upon a contingency which might never have happened, but which shall have happened after the said two years, and the creditor shall exhibit the same before the final settlement and distribution of the estate, the executor or administrator shall be liable only to the

Cutter *v.* Emery.

extent of the assets under his control. These provisions left no room for the question now before us, and no such point was considered.

The great question of the case is, whether the estate of Mr. Bartlett is liable to the estate of Mr. Jacob Cutter, for the amount, or any part of the amount, paid by the latter in discharge of C. W. Cutter's official bond of April 17, 1850, which was signed by both the deceased as sureties.

It is contended by the defendant, that as between these parties they were not co-sureties, but that Mr. J. Cutter and Mr. R. C. Cutter were sureties for C. W. Cutter, and Mr. Bartlett was only a surety for them, having signed as a surety at their request, and for their accommodation ; and that Mr. Bartlett's estate is not therefore liable to Mr. Jacob Cutter, or his estate, in any way.

The legal principle on which this position is taken is clearly well founded. If two persons sign the same obligation as sureties for a third, one of them, at the request of the principal, and the other at the request of the first surety, they are not co-sureties as between themselves, but the first surety stands in the relation of principal to the second; is responsible to him for whatever he may be compelled to pay, and has in no event any claim against him for contribution. This principle is held in our own court in *Pickering* v. *Marsh,* 7 N. H. 192, and is sustained by many decisions elsewhere. *Furnald* v. *Dawley,* 10 Shep. 470 ; *Taylor* v. *Savage,* 12 Mass. 102 ; *Harris* v. *Brooks,* 21 Pick. 196 ; *Blake* v. *Cole,* 22 Pick. 101 ; *Warner* v. *Price,* 3 Wend. 399 ; *Beaman* v. *Blanchard,* 4 Wend. 432 ; *Apgar* v. *Hiler,* 4 Zab. 812 ; *Thompson* v. *Saunders,* 8 D. & B. 404; *Daniel* v. *Ballard,* 2 Dana 296 ; *Byers* v. *McLenahan,* 6 G. & J. 256 ; *Craythorne* v. *Swinburne,* 14 Ves. 160 ; and see 1 Story's Eq. Ju. 476 ; Adams' Eq. (269) 606, note ; 1 Lead. Ca. in Eq. 87 ; 2 Swift's Sys. 152.

As to the facts upon which this position rests, the parties agree that " the court may draw such inferences and

come to such conclusions upon the facts as in their opinion a jury would be authorized to do."

It is not stated, in terms, that Mr. Bartlett signed either of these bonds at the request of Mr. Jacob Cutter, but it is stated that on the same day on which Mr. Bartlett signed the first bond, Mr. Jacob Cutter gave to him a bond to indemnify him against it, secured by a mortgage; and we think that a jury would not only be authorized, but they would be bound to infer that Mr. Bartlett signed the official bond wholly at the request of Mr. Jacob Cutter, and upon his agreement to indemnify him.

The principle on which one surety is regarded as liable as a principal to another surety, is that a state of facts is shown to the court from which it appears positively, or by fair and reasonable inference, that such surety intended to stand in the character of principal, as to the subsequent signers. 3 Wend. 397; 10 Shep. 470. We can rarely find more conclusive proof that a party intended to place himself in the position of principal, than that shown in this case as to this bond, where one surety gives to the other a bond of indemnity against the liability he assumes, secured by a mortgage of his estate. Even a parol engagement to indemnify another surety was held in 22 Pick. 100, 12 Mass. 198, and 21 Pick. 196, completely to rebut any right of a party to have contribution.

Charles W. Cutter, after his appointment had been submitted to the Senate and consented to, received a second commission to the same office, dated in April, 1850, and then gave a new bond, in the same form, and with the same sureties, but of course covering the extended term of the new commission, about six months longer than the first, and it was upon this bond that the judgment was recovered upon which Jacob Cutter made the payment for which his executrix now asks contribution.

It is contended by the defendant that the liability of Mr. Bartlett, under the bond of April, 1850, is covered by

the bond and mortgage of Jacob Cutter of October, 1849, so that the position of the case is in no material respect changed from what it would be if the payment made by Mr. Cutter had been made on a judgment recovered on the first official bond; because the second bond to the United States was for the discharge of the duties of the same office, of the same amount, and principally for the same period; and we are referred to many cases where it is held that a mortgage given to secure the payment of a debt is not discharged by a change of the security; as, for instance, by the renewal of a note, though in terms the mortgage may be conditioned for the payment of that particular note, or obligation alone; 2 N. H. 525; 12 N. H. 29; 8 Pick. 522; and though the new security be to a different person; 10 N. H. 210; 16 Pick. 22; or of a different nature; 10 Mass. 242. It will still be covered by the mortgage, and nothing less than the actual payment of the debt will discharge the mortgage. 1 Hill. Mort., chap. 16.

And it is contended, and we think with much reason, that upon the principle of these cases the court will look through the form to the substance of the transaction, and will consider the condition of the bond of indemnity as if inserted in the mortgage itself, and as designed to secure the obligee not merely against loss from the first official bond, but from loss arising from the liability assumed by him in that bond; so that, though a new bond should be given to secure the same liability, the mortgage would still be effectual to secure against the loss resulting from it; and that so long as the same substantial liability can be traced, mere difference of date or form will not be regarded; and that, so far as the identity continued, the indemnity would cover it, though the new security might perhaps include a greater time or a different amount.

But it is not necessary to pursue this point further, because no question relative to the mortgage is directly

before us; and upon the question of fact submitted to us, whether it can be justly inferred that Mr. Bartlett signed the last bond at the request of Mr. Jacob Cutter, we think there can be no doubt. It is no unusual thing that negotiable paper is from time to time renewed, sometimes in the same form, and with the same signatures and relations, and sometimes with unimportant variations of the amount and time of payment, or of the form of the instrument, or the order of signatures. A bill may take the place of a note. A payee may become an acceptor, or an indorser become a principal, with a view to evade the objections entertained by some persons against mere renewals. In such cases, we think, that upon its being satisfactorily shown that the latter note or bill was given as a renewal of a former note, and that upon that note the parties stood in certain relations, as principals and sureties, or indorsers, there could be but one inference, in the absence of other evidence, that the parties to the new note, whatever its form, retain still the same relations.

A like inference as strongly follows in this case. Where an appointment is made by the President, in the recess of Congress, a commission issues, bonds are given, and the officer assumes his duties. At the next session the appointment is laid before the Senate for their consent, and upon their concurrence a new commission issues, and new bonds are given; the bonds in each case being, in general terms, to discharge faithfully the duties of the office. If, then, as in this case, nothing appears to show change of the condition of the officer, except the confirmation by the Senate of the President's appointment, nor any change in the relations of the parties to each other, a jury would be perfectly warranted in inferring that the second bond, like the first, was signed by the one surety at the request and for the accommodation of the other, as a mere renewal required by the usages of the public offices; and they could hardly find otherwise without disregarding the reasonable probabilities of the case.

Rollins *v.* Robinson.

Mr. Bartlett, then, is to be regarded, as between these parties, as the surety of Jacob Cutter, and not liable to contribute to his losses.

Upon these views, unless the parties elect a trial on other grounds, there must be

*Judgment for the defendant.*