D. Wiley **COOK** and Sam L. Cook, III, Appellants,

v.

David R. **CRABTREE**, Defendant,

and

Starling D. Crabtree, a/k/a Starling P. Davis, Appellee.

Supreme Court of Tennessee, at Nashville.

June 22, 1987.

James C. Hofstetter, Hofstetter & Hofstetter, Nashville, for appellants.

Charles A. Trost, Waller Lansden Dortch & Davis, Dennis J. Meaker, Waller Lansden Dortch & Davis, Nashville, for appellee.

## OPINION

FONES, Justice.

The controlling issue in this litigation is whether defendant Starling Davis, one of six sureties who guaranteed payment by a corporate debtor of a bank loan, was a cosurety liable for contribution to plaintiffs, who paid the bank, or a subsurety with no obligation to contribute.

On 27 July 1981, Cambridge Investment Corporation [CIC] was chartered for the purpose of forming a travel agency, Travel Unlimited. David Crabtree, D. Wiley Cook and his brother, Sam Cook, III, agreed to invest in CIC; and each contributed $3,333.33 to the corporation's initial capitalization. They were CIC's only officers, directors and shareholders; and they agreed to share equally in the profits or losses incurred by the corporation.

CIC subsequently sought a line of credit from Commerce Union Bank [CUB], which agreed to loan the corporation up to $40,000 if the three owners and their wives would guarantee the corporate debt. On 10 September 1981, three separate Suretyship Agreements were executed. Upon signing these Agreements, each husband and wife agreed to be held jointly and severally liable for CIC's obligation to CUB up to $40,000. The Agreement signed by David Crabtree includes the signature of "Starling Davis Crabtree," Mr. Crabtree's ex-wife and the defendant before this Court [currently Starling Davis]. Although Wiley Cook signed the Crabtree guaranty as a witness to the signature of Starling Davis Crabtree, he acknowledged that he did not see her sign the guaranty but relied instead on David Crabtree's assurance. It is undisputed that defendant Starling Davis did not sign the September suretyship agreement.

In the fall of 1981, two separate $20,000 loans were made by CUB to CIC; these loans were eventually consolidated into one $40,000 note, the subject of this lawsuit.

In December 1981, the travel agency which needed additional money because it was carrying a large account receivable incurred by one of its prior corporate clients, sought to borrow an additional sum from CUB. The bank agreed if new suretyship agreements were executed to cover the extended indebtedness. On 14 December 1981, three new Suretyship Agreements were executed, each of which expressly guaranteed CIC's entire debt to CUB whether then existing or incurred in the future. Ms. Davis does not deny that she signed this Agreement along with her ex-husband.

In January 1982, the Cooks discovered that David Crabtree had misappropriated a significant sum of money from the travel agency. As a result he was required to surrender his stock in the corporation and sever his relationship with it and the travel agency. The Cooks assumed the management of the travel agency on or about 1 February 1982.

On 5 May 1982, Ms. Davis notified CUB that she was revoking her guarantee of CIC's debt under the 14 December Suretyship Agreement.

The Cook brothers managed the travel agency until 15 February 1983, when CUB cut off CIC's credit and the agency's employees were terminated. On 18 February 1983, CIC entered into a Management Agreement with a third party that permitted Travel Unlimited to resume operations. The note upon which this suit is based was continually renewed, the last time being 12 March 1983. Although CIC regularly paid the accrued interest, the principal of $40,000 has never been reduced. By letter dated 12 April 1983, CUB notified D. Wiley Cook and Starling Davis that the note would mature on 29 April 1983 and would not be renewed; payment was demanded in full.

On 3 May 1983, CUB indorsed the note to D. Wiley Cook and Sam Cook, III. On this same date, CUB assigned to the Cooks all liabilities and collateral appurtenant to the note.

The Cooks then brought suit as indorsees/assignees of the CUB note and collateral against David Crabtree and Starling Davis as sureties under the 14 December Suretyship Agreement. After trial in the Chancery Court for Davidson County, the chancellor held that the Cooks were subrogated to the rights of the original creditor, CUB, and that the Suretyship Agreement rendered the defendants liable for the principal's default. Although the Suretyship Agreement expressly guaranteed CIC's entire debt to CUB, the chancellor held that the original investors' agreement to equally share profits or losses limited the defendants' joint and several liability to one-third of the outstanding debt plus attorney's fees, a total of $18,943.40. The chancellor denied Ms. Davis' counterclaim against plaintiffs for indemnification on the basis that she was a mere subsurety; however, the chancellor granted Ms. Davis' cross-claim for indemnification on the basis that she was a subsurety with respect to her ex-husband.

Only Ms. Davis appealed. The Court of Appeals characterized the Cooks' suit as a claim for contribution by alleged cosureties who had paid more than their ratable share of the principal's debt. The Court of Appeals then held that the law of suretyship and the equities of this case required that Ms. Davis be classified as a subsurety not a cosurety and that, although she was liable to the bank creditor to the same extent as the other sureties, she could not be required to contribute when CIC's debt was paid by any one or more of the principal sureties.

Defendant, Starling Davis, relied upon several defenses, in addition to the subsurety issue. We agree with the Court of Appeals that under the circumstances shown in this record, Ms. Davis was a subsurety and the Cook brothers were principal sureties and not entitled to contribution from defendant Davis. Since that issue is dispositive of this litigation, we pretermit the additional issues raised by the parties.

As noted by the Court of Appeals, there is no reported Tennessee case that discusses the distinction between cosureties and subsureties. Also, there is not a large body of case law in our sister states involving subsurety issues. Our research discloses little or no conflict in the case law and we find that the definition and rules in the Restatement of the Law, Security, § 144 *et seq.* (1941), are in harmony with decisions of American and English courts.

The Restatement § 144 defines cosuretyship as the relation between two or more sureties who are bound to answer for the same duty of the principal and who, as between themselves, should share the loss caused by the default of the principal.

Subsuretyship is defined in Section 145 as the relation between two or more sureties who are bound to answer for the same duty of the principal where one, the principal surety, in respect of the other, the subsurety, has the whole duty of performance.

The comment to Section 145 is as follows:

a. *Incidents of subsuretyship.* Suretyship in its simplest form is a tripartite relationship involving a principal, a creditor, and a surety, see § 82. Where there are two sureties, the usual relation is cosuretyship, but by agreement between them or because of the equities of the situation, one of them as between themselves, may be liable for the entire loss caused by the default of the principal and hence not a cosurety. Where this is true, there are two interlocking tripartite relationships. The creditor has two sureties for his principal, but between the sureties one of them is a principal and the other a surety, that is, the former rather than the latter should perform. The former is a surety as to the principal debtor but is a principal as to the other surety. In view of the dual position of the former, he is called the principal surety. The surety to whom the principal surety is in the relation of principal is the subsurety.

The rules governing the relation of principal and surety as stated in Chapter 4, are applicable to the relation of principal surety and subsurety. The most important incident of the relation is that if the subsurety performs he is entitled to reimbursement from the principal surety. If the principal surety performs, he is not entitled to contribution from the subsurety.

Comment b to Section 145 observes the obvious, that there may be any number of principal sureties and any number of subsureties or a group of principal sureties and a group of subsureties.

Section 146 of the Restatement sets out the basic rules for distinguishing between subsureties and cosureties and reads as follows:

§ 146. Determination of the Relation Between Sureties.

Where there are two or more sureties for the same duty of the principal, the following rules are applicable to the determination of the relation between themselves:

(a) The sureties may conclusively determine their relation by agreement.

(b) The sureties are cosureties in the absence of agreement or stipulation of either to the contrary or of duties or equities imposing the principal liability on one of them.

(c) A surety is a subsurety if he has so stipulated and is not under a duty to assume a greater liability, except to the extent that his stipulation will inequitably increase the obligation of another surety.

In the comments to Section 146(b) it is said that absent an agreement, where two or more sureties are bound to a common duty, they are assumed to be cosureties "unless there is some positive reason for making one a principal and the other a subsurety."

There are two positive reasons applicable to Ms. Davis found in Sections 146 and 147 that rebut the assumption of cosuretyship and require that we classify Ms. Davis as a subsurety.

The first exception to the assumption of cosuretyship is expressed in the comments to Section 146(b) as follows:

One surety may have such a business interest in the transaction that he will be the principal surety to another surety.

The evidence is undisputed that Ms. Davis had no interest whatever in CIC or its travel agency. She was not a stockholder, officer, director or employee. It was also undisputed that the bank required the signature of the wives of the Cook brothers and David Crabtree and that the wives were not parties to the agreement between their husbands that the three of them would share equally all profits, losses and liabilities. That agreement, to which Ms. Davis was not a party, was relied upon, in part, by the trial court in imposing co-suretyship liability upon Ms. Davis for one-third of the corporate debt and contribution to plaintiffs.

The rule upon which the second exception applicable to this case is predicated is expressed in Section 147(2) as follows:

§ 147. Typical Instances of Subsuretyship.

(1) ....

(2) Where a surety assumes his obligation at the request of another surety who is already bound, the former is a subsurety.

In the comment to Section 147(2) the point is made that, where the requesting surety is already bound, he or she derives a special benefit from the other's promise and is therefore a principal surety, absent an agreement by the subsequent surety to be bound as a cosurety. This rule has been approved in *Kurzman v. Steir*, 12 Mass. App. 470, 426 N.E.2d 165 (1981); *Cutter v. Emery*, 37 N.H. 567 (1859); *Daniel v. Ballard*, 32 Ken. 296 (1834); and *Taylor v. Savage*, 12 Mass. 98 (1815).

Both courts below found that Ms. Davis did not sign the 10 September 1981 suretyship agreement and that all of the $40,000 indebtedness that plaintiffs paid and for which they first sought indemnification, then contribution in this suit, was incurred prior to 14 December 1981.[1] The Cook brothers, their wives and David Crabtree were all liable to the bank for the entire $40,000, plus interest, from and after 10 September 1981. Wiley Cook and David Crabtree requested that Ms. Davis sign a suretyship agreement on or about 14 December 1981 at a time when they, Sam Cook and the spouses of the Cook brothers were all bound to the bank as guarantors of CIC's existing debt and Ms. Davis was not so bound. The Court of Appeals found that there was no evidence in this record that Ms. Davis knew on 14 December 1981 that her signature had been forged to a prior suretyship agreement or that she in any manner ratified that forgery at any time. We agree. The trial judge made no express finding with respect to when she discovered that her signature had been forged but clearly predicated her liability upon the 14 December suretyship agreement that she admitted signing.

It is our conclusion that the Cook brothers and David Crabtree were the principal sureties and that Ms. Davis must be classified as a subsurety, with no duty of contribution to the principal sureties.

The judgment of the Court of Appeals is affirmed and this cause is remanded to the trial court for such further proceedings as may be appropriate consistent with this opinion.

Costs are adjudged against plaintiffs.

BROCK, C.J., HARBISON, and DROWOTA, JJ., and GREER, Special Justice, concur.

---

1. The temporary money advanced to CIC by the bank for which the bank required the 14 December 1981 suretyship agreement was repaid by CIC prior to the bank calling upon the sureties to pay.