*W. Cumback, S. A. Bonner, J. Gavin,* and *J. D. Miller,* for appellee.

---

## Bagott and Another v. Mullen.

JURISDICTION.—*Appearance.—Pleading.*—Where the record of a judgment shows an appearance for the defendant, the court's jurisdiction of his person can only be controverted by proof of fraud, or that he was not a resident of the State or, during the pendency of the suit, within the jurisdiction of the court, and had no notice of the action and did not authorize the appearance, unless, he having been a resident of the State or within the court's jurisdiction during the pendency of the suit, and not having received notice or authorized an appearance, a defense can be established on the merits. The general averment of fraud, without any statement of facts, constitutes no ground upon which to question the court's jurisdiction.

PRINCIPAL AND SURETY.— *Contribution.*—A surety is not discharged from liability to his co-surety for contribution by the mere fact that the former signed at the request of the latter.

APPEAL from the Ripley Common Pleas.

RAY, J.—Complaint against appellants, charging, that, in 1864, the State, on relation of Hasselman and another, recovered a judgment against one Vandever, as sheriff, and the appellee, and the appellants, upon an official bond, a copy of which judgment is filed with the complaint; that said Vandever is notoriously insolvent; and that appellee has been compelled to pay said judgment in full, and demands contribution from the appellants.

A sixth paragraph of answer was filed, which averred that process was not served personally on the appellants in the suit upon which the judgment was rendered, and that neither of the appellants appeared to the action; but that the appellee, without authority, appeared for them and suffered judgment to be entered against them, to defraud them,

and entered into a special contract with the relators to pay the said judgment with funds belonging to the said defendant Vandever, then in the hands of the said appellee, and, in consideration of said agreement, received an extension of time for one year on said judgment; that but for such extension of time, the sum named in said judgment could have been made out of the property of said Vandever; and that said extension of time was given without the knowledge of said appellants. It is also alleged, that the appellants signed the official bond of Vandever from which the liability arose, at the request of the appellee.

A demurrer was sustained to this paragraph.

It will be seen that the answer does not charge that the appellee had any funds in his hands belonging to the judgment defendant Vandever, or that the appellants had any defense to the action, or that the agreement to extend the time within which said appellee was to pay the judgment himself out of such property, prevented the appellants from having execution against the property of the principal defendant in the judgment; nor was the contract for an extension of time made a part of the judgment entry. It is recited in the judgment record, that the parties to the suit appeared and submitted the cause for trial to the court, and that it was agreed by the parties that the plaintiff should have judgment against the defendants.

The ruling in the case of *Wiley* v. *Pratt*, 23 Ind. 628, was, that where the judgment showed an appearance for the party, the jurisdiction of the court can only be controverted by proof of fraud, or that the judgment defendant was not a resident of the State, nor during the pendency of the suit within the jurisdiction of the court, and had no notice of the action nor authorized the appearance, unless, without such notice or authorized appearance, a defense can be established on the merits to the cause of action. The general averment of fraud, without any statement of facts, constitutes no ground upon which to question the jurisdiction of the court.

There remains, then, the averment that the appellants signed the bond of Vandever, as sheriff, at the request of the appellee.

It is stated in Chitty on Contracts, that if the surety from whom contribution is claimed, became bound at the request of the surety who seeks to recover it, he is not liable; for in such a case the promise to contribute implied in law is negatived. 10th Am. Ed. 669. The cases cited as sustaining this rule, are *Turner* v. *Davies*, 2 Esp. 478; *Thomas* v. *Cook*, 8 B. & C. 728; *Taylor* v. *Savage*, 12 Mass. 98; *Daniel* v. *Ballard*, 2 Dana, 296; *Byers* v. *McClanahan*, 6 Gill & J. 250; *Apgar* v. *Hiler*, 4 Zabr. 812; *Batard* v. *Hawes*, 2 Ellis & B. 287.

In the case first cited, Turner sued Davies to recover a moiety of a sum paid by him on account of the debt of one Evans. The foundation for the claim to contribution against Davies was this: There being an execution in Evans' house, at the suit of one Brough, to induce the execution plaintiff to withdraw it, Turner and Davies joined in a warrant of attorney to Brough, but Davies joined in consequence of having been applied to by Turner, and also by Brough, who required an additional security. Turner, the plaintiff, at the time, took a bill of sale from Evans for his indemnity. It was held, that Davies was not bound to contribute, Turner having been compelled to discharge the debt of Evans. Lord KENYON, while resting this case specially on the ground that Turner had secured himself by a bill of sale, declared, that where one has been induced to become security at the instance of another, though he thereby renders himself liable to the person to whom the security is given, there is no pretense for saying that he shall be liable to be called upon by the person at whose request he entered into the security.

The case of *Thomas* v. *Cook*, was where one signed as co-surety, at the request of a surety who agreed to save him harmless. It was held, that the promise to save harmless was a good defense to an action by the promisor.

In the authority referred to in 6 Gill & J. 250, it was held, that the surety who claimed to be discharged did not sign it at the request of his co-surety, but at the request of the principal, and there was no occasion for the court to determine what would have been the law had the facts been otherwise. The same is true of the case in 12 Mass. 98.

In *Apgar* v. *Hiler*, it was held, that where one of two sureties becomes such at the request of his co-surety and upon his promise that he will be put to no loss, he may recover the whole of what he may have been compelled to pay of his co-surety.

In *Daniel* v. *Ballard*, it was declared, that one who becomes bound as a surety, at the instance and for the benefit of a co-surety who afterwards pays the whole debt, is not liable to him for contribution.

In the case in 2 Ellis & B. the court did not consider this question.

There are other cases where the circumstances are held to rebut the presumption of a promise to contribute between sureties. In *Cutter* v. *Emery*, 37 N. H. 567, the first surety gave a bond to indemnify the second surety against the liability he assumed. In *Harris* v. *Brooks*, 21 Pick. 195, a parol agreement was held sufficient to discharge a co-surety from contribution. So, also, in *Blake* v. *Cole*, 22 Pick. 97.

In all these cases there was something more than a mere request by one surety to another to execute the note or paper as co-surety. There was either a promise written or verbal to indemnify, or a taking of security from the principal, and from either of these circumstances the courts hold such surety released from contribution.

It was held, until near the close of the last century, that the action for contribution between sureties rested alone upon the principles of equity, and could only be enforced in that jurisdiction. But in *Cowell* v. *Edwards*, 2 B. & P. 268, in the year 1800, it was observed by the court, that it might then be too late to hold that the action

could not be maintained at law. The suit was *indebitatus assumpsit* for money paid. It may now be regarded as settled that the right of action in such cases arises out of a contract implied in law to contribute among the sureties a ratable proportion of the amount for which all are liable. This claim can be defeated by showing any circumstances which rebut the presumption of such an implied agreement. In *Blake* v. *Cole, supra,* it was said, "no question can be made of the general rule, that if one surety pays the whole debt, or more than his part, he has a right to recover at law a contribution against his co-surety. *Batchelder* v. *Fiske,* 17 Mass. 468. The defendant, then, must be charged, unless he can show some defense exempting him from the operation of the general rule. And for this purpose he relies upon the fact that he became surety at the request of the plaintiff's intestate, and upon his verbal promise to indemnify him."

In *Warner* v. *Price,* 3 Wend. 397, it was held that where the fact appeared that persons signed as sureties, "they must all be considered co-sureties, unless a state of facts be shown to the court from which it shall appear positively, or by legal intendment, that these defendants intended, as to the subsequent signer, to stand in the character of principals." See, also, *Norton* v. *Coons,* 3 Denio, 130, and 2 N. Y. 33.

In the case of *McNeil* v. *Sanford,* 3 B. Mon. 11, it was held that the circumstance that the last obligor did not sign until eight months after the other sureties were bound, was "altogether insufficient to qualify either the actual or legal import and effect of the obligation on its face, and show that he was merely a collateral guarantor of the other obligors, and not a co-obligor with each and both of them."

Are we, then, to follow the broad doctrine declared by Lord KENYON, and the application of which was, in fact, uncalled for in the case before him—a case decided at *nisi prius*—and never heretofore applied by any court, and hold the surety discharged by the simple request of his co-surety to sign the obligation?

Bagott and Another *v.* Mullen.

If a surety making the request, receive any personal benefit from the execution of the obligation—as where the money raised thereon goes into his hands, or where he has already incurred a liability upon an instrument completed by delivery—we can see a propriety in the court treating the person thus benefited and making the request, as a principal, and the person signing at such request as his surety only and not liable to contribute for his benefit. So, where the signature is upon an express contract to indemnify, the consideration supports the promise and discharges the surety from the legal obligation otherwise resting upon him.

But where parties standing in an equal relation to the principal sign as sureties for that principal, the one at the request of the other, we are not satisfied that any sound principle of law or equity will discharge either from the legal obligation he assumes on the face of the instrument to contribute his proportion on default of the chief obligor. Indeed, the adoption of such a rule would be, in this State, contrary to the prevailing practice and understanding of parties to such contracts and most disastrous in its consequences. Few officials present their bonds in person for execution by their friends as their sureties; but the bond is executed at the request of a mutual friend; and no one has supposed that in case of loss the liability, as between the sureties, must rest upon that friend, who has simply been most active in the promotion of a common object.

In our opinion, therefore, the averments of the sixth paragraph of the answer were not sufficient to constitute a defense to the action, and the demurrer was properly sustained.

Judgment affirmed, with two per cent. damages and costs.

*H. W. Harrington* and *M. K. Rosebrough*, for appellants.