D. M. RIGLER v. THE CHARLOTTE, COLUMBIA AND AUGUSTA RAILROAD COMPANY.

*Contributory Negligence—Railway Crossing.*

1. Where the plaintiff's negligence contributes to the injury of which he complains, and for which he seeks to be compensated in damages, he cannot recover; and the same rule applies when it is shown that both parties are in fault.

2. Where highways cross railways, the law requires a reasonable degree of care and diligence in both the public and the corporation in the use of the crossing, and negligence in the corporation will not excuse a traveller approaching the crossing, from using that degree of care and circumspection, necessary to secure his safety.

3. Where a traveller is approaching a railway crossing, with an unobstructed view of the track in both directions, it is his duty to look both ways, and if he attempts to cross in front of an advancing train, and receives injury, he cannot recover, and the failure of the engineman to give the precautionary signal, when it does not contribute to the accident, does not impose a liability on the corporation.

4. Although a person injured by a railroad train, be in fault to some extent, yet he can recover, if the injury could not have been avoided by ordinary care on his part.

5. Railroad corporations are not required to stop their trains, when a vehicle is seen by the engineman approaching a crossing in order to allow it to pass the track in front of the train.

6. Negligence can be attributed to a railroad company, only when it has notice of the emergency, in time, by the use of ordinary diligence, the means being at hand, to avoid the accident.

(*Parker* v. *The Railroad Co.*, 86 N. C., 221; *Manly* v. *The Railroad Co.*, 74 N. C., 655; *Wilson* v. *The Railroad Co.*, 90 N. C., 69, cited and approved).

CIVIL ACTION, tried before *Shipp, Judge,* and a jury, at Fall Term, 1885, of MECKLENBURG Superior Court.

The plaintiff alleged in his complaint, that in crossing the railroad of the defendant, near the city of Charlotte, in a wagon drawn by one horse, and when he had reached, and just passed the road, being retarded by an unforseen and unavoidable accident, the defendant carelessly and negligently caused one of its locomotives, with one or more cars attached, to approach and pass rapidly over the said crossing, at great speed, and by reason of said negligence, the locomotive and train ran against the plaintiff's wagon, breaking it to pieces, and draging and injuring his horse, rendering him useless for a time, and permanently impairing his usefulness.

The defendant, in its answer, denied that it carelessly and negligently caused one of its trains of cars, on the day specified, to approach and pass rapidly over said crossing. It also denied that the plaintiff, or his property, was injured or damaged through the fault or negligence of the defendant.

And for a further defence, it said, if the plaintiff or his property was injured or damaged at all, in the manner as set forth in the complaint, the plaintiff contributed thereto, by causing his horse to back his wagon upon said railroad crossing, and thereby came in collision with the defendant's train, which train was in full view of plaintiff, prior to said crossing.

The following evidence was offered before the jury:

D. M. Rigler, the plaintiff, testified for himself, that on the 16th day of July, 1881, he was going to his farm, about one mile from the city of Charlotte, in a wagon drawn by one horse, and was accompanied by a colored boy, and a white child, his nephew. The way to the farm was down Tryon street, then turning to the left, across the railroad of the defendant, on a private crossing, which had been used by himself and the former owners of the farm to which he was going, for many years. When near this crossing, witness saw, on the tract towards Charlotte, at the mouth of the cut, and about three hundred and fifty yards distant, an engine with a car attached. He drove across the track, the horse passing over the track, and the wagon also. The rear end of the wagon barely passed the track, when the the horse shied and backed. Witness struck the horse, and the horse moved forward, but did not clear the track. The horse backed three or four times, while witness was endeavoring to urge him forward and off the track. While this was going on, witness looked up the track, and noticed that the engine was then at Palme's crossing, some three hundred yards distant in the direction of Charlotte. When the engine was near, or at the gravel pit, which is from 170 to 180 yards from the crossing where plaintiff's horse shied, the engineer sounded the danger signal. At that time the horse was backing, and the wagon was on the track. When he saw that the engine would strike the wagon, the colored boy jumped from the wagon, and witness grasped his nephew to throw him from the wagon, at the same time jumping from the wagon himself. Immediately, the engine struck the wagon, breaking it into pieces, and dragged the horse four or five yards. The train, when it struck the wagon, was running at the rate of 20 miles an hour, and the wagon was carried, with his nephew, on the pilot of the engine, 124 steps when the engine was stopped.

The track was straight from the cut where he first saw the train, to the crossing where the accident occurred, and the view on either side was unobstructed.

The grade of the road from the cut to his crossing, (where the accident occurred,) was slightly ascending.   He was from twelve to twenty yards from his crossing when he first saw the train, (at the mouth of the cut).   He did not know, and could not tell whether it was moving or not.   When his horse was first crossing, the train was three hundred yards distant.   The witness then testified to the amount of his damages, and the plaintiff rested.

The defendant introduced as a witness one Syphron, who testified that he was a locomotive engineer, and had been engaged in the business for ten or twelve years; and was running the engine spoken of by the plaintiff at the time of the accident.   As he came out of the cut, he saw Rigler turning out of Tryon street, and noticed that he was looking at the train.   When the engine got within fifty yards of Rigler's crossing, witness saw Rigler stop near the crossing; noticed that he whipped his horse and started to cross.   He blew brakes and reversed the engine. Rigler got across.   Horse backed and the accident occurred. He saw Rigler forty yards from the track, near some bushes. He stopped between the bushes and the track, looked at the train, and then struck his horse.   The engineer was then fifty yards from the crossing.   There were no air brakes on the engine. It was from 317 to 310 yards, from this crossing to the cut from which he first saw the plaintiff.   When 250 yards from the crossing he blew the brakes, and got the engine under tolerably fair control.   When Rigler stopped, he blew off brakes.   When he started again, the engine was within fifty yards of the crossing, and was reversed then.   The gravel pit is 75 or 100 yards from Rigler's crossing.   He had worked in machine shops, and had served as fireman on an engine four years, and considered himself competent to run an engine.

Witness further testified, that this was a pay train, consisting of an engine, tender and coach.   The coach had air brakes on it, but on the engine there were no appliances for working the air brakes.   This was a freight engine.   The company has air brakes

only on its passenger engines. The train started from the yard and stopped first at the bridge, fifteen or twenty yards from the mouth of the cut spoken of on the direct examination; was running ten or twelve miles an hour when he first saw Rigler. Ran thirty or forty yards from the starting point, when he first blew brakes. Was then running fifteen or twenty miles an hour. The speed slackened and was running ten or twelve miles an hour when he blew brakes off. Rigler was twenty-five or thirty yards from the crossing when he stopped. He was running fifteen miles an hour when he struck the wagon. He could not stop the engine within 150 yards. He stopped the engine about fifteen yards south of the crossing, when the wagon body fell from the pilot. If air brakes had been on the train, and in use, he could have stopped the train in 75 or 80 yards. This train being a pay train, was classed in the rules of the company as a passenger train, and by those rules, its maximum rate of speed was fixed at thirty-five miles per hour. That he was keeping a good lookout as he went down the track.

One Smith, a witness for the defendant, testified that he was treasurer of the defendant Company, and was on the train at the time of accident. When the first signal was given, he was in the front part of the coach, and when the second signal was given, witness went to the door at the other end of the coach, and when he looked out, the accident had happened. The train was running at fifteen miles an hour when he heard the first signal; that he had known Syphron, the engineer, and he had the reputation of being a good locomotive engineer.

The defendant then introduced one Isaac Goode, who testified that he was brakesman on the train, and was at end of coach next to the engine, and put on and off brakes when signalled to do so; that he had put on brakes twice and put off brakes once when the accident occurred. This was the evidence for the defendant.

The plaintiff, introduced in reply, testified that he did not stop at all when approaching the crossing; that the engine

whistled at the cut, and then again at or near the gravel pit, when it sounded the danger signal; that he had measured the distance, as before testified to by him.

J. M. Kendrick, witness for plaintiff, testified that he measured the distance from Rigler's Crossing to the point where the wagon dropped from the engine, and found the distance to be 109 steps.

Here the testimony closed.

His Honor intimated that upon the testimony, plaintiff could not recover, and that he would so instruct the jury. In deference to this opinion, the plaintiff submitted to a non-suit, and there was judgment accordingly, from which the plaintiff appealed.

*Mr. Platt D. Walker*, for the plaintiff.
*Mr. Geo. E. Wilson*, filed a brief for the defendant.

ASHE, J., (after stating the facts). The plaintiff contended that it was through the negligence of the defendant Company that he sustained the injury complained of, and the defendant, on the other hand, insists that no negligence is to be imputed to it, and if the plaintiff's property was injured, as alleged in his complaint, it was caused by his contributory negligence, in attempting to cross the road when he saw the car approaching.

The question of primary importance in the case is, did the plaintiff's negligence contribute to the injury of which he complains? If it did, then the great weight of authority is, that he cannot recover; and it is equally so, when both parties are at fault.

It is the duty of each party to use a reasonable degree of foresight, skill, capacity, and actual care and diligence, to enable each to use the privilege of crossing—but still, negligence on the part of the railroad company, will not excuse any one approaching a crossing, from using that degree of care and circumspection, which is necessary to secure his safety.

39

When a traveller is approaching a railway crossing, with an unobstructed view of the track in both directions, it is his duty to look both ways, and if he advances to the point of intersection, and attempts to cross in front of the approaching cars, and receives an injury, such conduct will constitute negligence, so as to preclude him from recovering. Thompson on Negligence, 426, and the numerous authorities there cited. To the same effect is Pierce on Railroads, 331—323. The same rule has been adopted by this Court. In *Parker* v. *R. .R. Co.*, 86 N. C., 221, it was held that, one crossing a railroad track, must be on the alert to avoid injury from trains that may happen to be passing; and the omission of the engineer to give the precautionary signals of the approach of a train, when it in no way contributed to the alleged injury, does not impose a liability upon the company—and in *Manly* v. *W. & W. R. R. Company*, 74 N. C., 655, the rule is thus laid down by RODMAN, Judge: "When the injury arises neither from malice, design, nor wanton and gross neglect, but simply the neglect of ordinary care, and the parties are mutually in fault, the negligence of both being the immediate and proximate cause of the injury, a recovery is denied, upon the ground that the injured party must be taken to have brought the injury upon himself." But the rule is subject to the qualification, that the injured party, although in fault to some extent, at the same time, may notwithstanding this, be entitled to damages for an injury which could not have been avoided by ordinary care on his part. "When the negligence of the defendant is the proximate cause of the injury, but that of the plaintiff only remote, consisting of some act or omission, not occurring at the time of injury, the action for damages is maintainable." But the evidence in this case, even that of the plaintiff himself, does not bring his case within the scope of either of the qualifications. According to his testimony, the train was running at the rate of twenty miles an hour, and at that rate must have reached the crossing in two or three minutes from the time it was seen approaching by the plaintiff, and yet, with a train coming in full

view, at that speed, he attempted to cross the track with a wagon. It seems to us, that no man of common prudence would have made the attempt to cross under such circumstances, but would have made a halt, and waited until the train had passed. But the plaintiff seems to have made his calculation as to the time it would take the train, coming at the speed he describes, to reach the crossing, and without taking into his calculation the abatement of the speed by putting on the brakes, he made the attempt to cross, and had succeeded in doing so, and would have been safe, if it had not been for his horse backing the wagon on the track, just at the time the train was passing. The attempt to cross the road under the circumstances, not only showed a want of due care on the part of the plaintiff, but reckless conduct, that amounted to gross neligence; and although :.e was in no fault in the backing of the horse on the track, if he had not attempted to cross, in the face of the impending danger, the accident of the backing of the horse on the road would not have happened, so we are of the opinion his contributory negligence was the cause of his injury, and that being so, it can make no difference whether negligence is imputable to the defendant or not. But we think the defendant company did all that was in their power, and all that could be expected of them to have been done under the circumstances, to prevent the catastrophe.

When the engineman saw the plaintiff approaching the track, he blew the brakes on at the distance of 250 yards, and when in 170 yards, he sounded the danger signal. When the plaintiff stopped, he blew off the brakes, and then, when in fifty yards of the crossing, we take it, when he saw the horse backing, he blew on the brakes again, and reversed his engine, but it was too late to stop the engine in so short a distance.

It was a freight engine, and had no appliances for working the air-brakes. With air-brakes, he might have stopped it within 75 or 80 yards, but without them, it could not be stopped short of 150. Air-brakes were used by the company on the passenger engines only.

The plaintiff insisted that it was negligence in the company, in not having air-brakes on the engine, but even air-brakes would have been ineffectual to prevent the collision, for the necessity of reversing the engine the second time, did not occur, according to the evidence of the engineman, until the train was within fifty yards of the crossing, and was not stopped until it had run one hundred and twenty-four steps below the crossing, as testified by the plaintiff.

The defendant, it seems to us, did all that was necessary to prevent the injury, except to stop the train, or bring it to the lowest speed, until the plaintiff could pass. That the law did not require him to do. The engineman sounded the danger signal in full time for the plaintiff to take warning—the brakes were put on twice in the distance of two hundred and fifty yards, and the speed of the train, whose schedule time was thirty-five miles an hour, and was then running at the rate of fifteen or twenty, was reduced to twelve miles an hour when it passed the crossing. Negligence can only be attributed to a company, when it has notice of the peculiar emergency, in time, by the use of ordinary diligence, the *means being at hand*, to avoid the collision. *Railroad* v. *Hunter*, 32 Ind., 335, 364.

And in *Wilson* v. *Railroad*, 90 N. C., 69, which was an action against the company for killing a mule, the Judge in the Superior Court, charged the jury: "If the engineer saw the mule that was killed, a quarter or half a mile ahead of the train, and the mule left the track when the train was a quarter of a mile away, and the engineer had reason to believe that the mule was no longer in danger, and afterwards the mule ran upon the track, in front of the engine, then the defendant was not guilty of negligence, unless the engineer could, by *using the appliances* at his command, have stopped the train, after the mule had jumped upon the track the second time, so as to prevent the killing." The instruction was affirmed by this Court.

We hold that there was no error, and the judgment of the Superior Court is affirmed.

No error. Affirmed.